UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| WILLIAM D. CHAPMAN,<br>         Plaintiff<br>-vs-<br>THE PLAN ADMINISTRATION COMMITTEE OF CITIGROUP, INC., CIGNA LIFE INSURANCE COMPANY OF NEW YORK, a/k/a CIGNA GROUP INSURANCE, a/k/a CIGNA WORLDWIDE INSURANCE CO., a/k/a INA LIFE INSURANCE COMPANY OF NEW YORK, and CITIGROUP, INC., a/k/a CITIGROUP,<br>         Defendants | DECISION AND ORDER<br><br>10-CV-6468 CJS |

_____

APPEARANCES

For Plaintiff:        Lawrence I. Heller, Esq.
             1 East Main Street, Suite 950
             Rochester, New York 14614

For Defendant:       Kevin Horbatiuk, Esq.
             Russo, Keane & Toner, LLP
             33 Whitehall Street, 16th Floor
             New York, New York 10004

INTRODUCTION

   This is an action to recover long-term disability insurance benefits, brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Plaintiff, who is disabled under the subject long-term disability policy and is currently receiving benefits, maintains that Defendants are paying him less than the correct amount under the policy. Now before the Court are the parties' competing motions for summary judgment, which are each granted in part and denied in part.

1

BACKGROUND

Plaintiff previously sued Defendants to obtain a determination that he was disabled under the policy, and the reader is presumed to be familiar with the Court's prior Decision and Order granting summary judgment to him. *See, Chapman v. The Plan Administration Committee of Citigroup, Inc., et al.*, 06-CV-6444, 2008 WL 141632 (W.D.N.Y. Jan. 14, 2008).

Although Plaintiff is receiving long-term disability payments, he now maintains that Defendants improperly calculated the amount.[1]  Specifically, Plaintiff contends that Defendants construed Amendment 10 to the Long Term Disability Plan in a manner that is arbitrary and capricious, by failing to include all elements of his "Total Compensation" when calculating his monthly benefit. *See*, Complaint [#1] at ¶ 19.[2] Amendment 10 states, in pertinent part:

> Covered Earnings is Total Compensation as defined by the Employer.  Total Compensation is your gross pay before any deferrals into 401(k), deferred compensation plans or flexible spending accounts and includes salary paid from the prior calendar year, commissions paid from the prior calendar year, bonuses paid in the prior calendar year (excluding annual incentive bonus paid in February of the prior year), and annual incentive bonus paid in February of the current year for prior year performance.

Cigna Life Insurance Company of New York ("CLICNY") Policy No. NYK-2260, Amendment 10, CLICNY 00438.  For purposes of this action, the parties agree that in calculating Total

---

[1] *See*, Heller Affidavit [#8] at ¶ 7 ("[T]he issue in this matter is simply whether Defendants are short changing the Plaintiff's monthly payment from September, 2004 to date and continuing, based on an erroneous or ambiguous reading of language in the Plan, SPD and Amendments.").

[2] *See also*, Pl. Memo of Law [#8] at p. 3 ("[T]his matter is ripe for summary judgment . . . on the sole remaining issue of correct interpretation of the term 'Total Compensation' in Amendment 10 and Plan.")

Compensation under this definition, the "prior calendar year" is 2002, and the "current year" is 2003.[3]

The relevant calculations used by Defendants are set forth in the "Citigroup Inc. Plans Administration Committee Agenda dated November 29, 2006," Citigroup 00001.[4] Column B of that document lists nine separate dollar figures or "items of compensation," identified by letter (a, d-k), as follows: a) Sales Compensation (before deductions for deferred comp and 401(k)) $130,214.64;[5] d) ADCP [Deferrred Compensation] Payout (2001 deferral) $90,695.70; e) ADCP Interest $1,758.21; f) Longevity Bonus $4,296.46; g) Asset Gathering Cash $2,811.00; h) Asset Gathering Cash Interest $714.75; i) Term Life Insurance Imputed Income $774.00; j) Money Market Fund Trails Principal $2991.10; and k) Money Market Fund Trails Interest $427.23. Of these nine possible items of compensation,[6] Defendants used only the first, item a, and determined that Plaintiff's Total Compensation under the plan was $130,214.64. *See, id.*, Citigroup 00004 (Indicating that items d-k in Column B were not considered part of Total Compensation).

---

[3] Counsel agreed on this point at oral argument, and it is the year that they relied on in making their calculations in the administrative proceeding, and which Plaintiff used in his Complaint.

[4] This document pertains to Plaintiff's application for short-term disability benefits, but Defendants apparently used the same numbers when considering his long-term disability payments.

[5] Plaintiff worked on a commission basis and did not have a base salary. (CLICNY 00538). In his response to Defendants' summary judgment motion, Plaintiff mistakenly argues that the figure of $130,214.64 "does not include" deductions for deferred comp and 401(k) contribution. *See*, Reply in Opposition to Def. Mot. for Summary Judgment at p. 4. He is incorrect. Specifically, the record indicates that in 2002, his gross sales commissions were $130,214.64, from which $62,011.97 was deducted for deferred compensation, and $11,000.00 was deducted for 401(k) contributions.

[6] Based on the definition in Amendment 10 above, another possible element of Total Compensation, not listed in Column B, is any incentive bonus that was paid to Plaintiff in February 2003 for his performance in 2002. However, the record does not establish that Plaintiff received any such bonus.

Plaintiff maintains that Defendants' calculation of Total Compensation was erroneous, as well as arbitrary and capricious. During the administrative process, Plaintiff maintained that the correct figure for "Total Compensation" was $225,206.80, which he arrived at by adding items a, d and f. *See, e.g.*, email of Thomas Sinagra, Senior Claim Manager, Cigna Group Insurance date October 9, 2009, CLICNY 00200 ("In addition to the earnings figure of $130,214.64, Attorney Heller also feels that an ADCP payment of $90,695.70 should have been added to this earnings figure, as well as a longevity bonus of $4,296.46. Adding these 2 adjustments then yields the Total Compensation figure of $225,206.80 that Attorney Heller feels the LTD benefits should have been calculated off of.").

When commencing this action, Plaintiff continued to maintain that the correct Total Compensation figure was $225,206.80. In his Complaint, Plaintiff reiterated that this figure was accurate, based upon adding items a, d and f. *See*, Complaint ¶ 24. Moreover, in support of his motion for summary judgment, Plaintiff maintained the accuracy of this calculation. *See*, Memo of Law in Support of Plaintiff's Motion for Summary Judgment at p. 2, Docket No. [#8] at p. 7 (Indicating that Defendants incorrectly calculated Plaintiff's benefit "using a monthly covered earnings-total definition figure of $130,214.64, *rather than the $225,206 figure Mr. Chapman had insisted on at all times.*") (emphasis added); *see also*, Docket No. [#8] at p. 11 ("The suggested figures are $130,214.64 plus ADCP payment of $90,695, plus longevity bonus of $4,296.46 = $225,206.80 = Total Compensation.").[7]

---

[7] Recently, in opposition to Defendants' summary judgment motion, and without attempting to amend his pleading, Plaintiff indicated that he did not know what the correct amount of Total Compensation should be: "Plaintiff alleges the correct figure to use is not $130,214.64 basis, [sic] but, (continued…)

4

---

[7](...continued)
instead $234,688.218 [sic] . . . or perhaps 2002 W-2 form pay stubs [sic] . . . or, perhaps, 2003 or earnings, [sic] . . . but one thing is certain: It is not $130,124[.]" Pl. Reply in Opposition to Defendants Mot. for Summary Judgment at p. 2. The rest of this submission, which reads more like an ill-considered rant than a legal argument, suggests that there are also "many" other ways that a court might interpret the plan.

Still later, after oral argument of the motions, Plaintiff alleged that yet another calculation was actually the correct one, in the amount of $230,386.72. On this point, at oral argument, the Court directed Defendant's counsel to submit a supplemental brief, clarifying how Defendants calculated Plaintiff's Total Compensation, particularly in regard to Defendant's decision not to include items f-k in that amount. The Court also told Plaintiff's counsel that he could submit a response to Defendants' counsel's letter brief. Defendants' counsel subsequently submitted a letter brief, explaining why Defendants chose not include the aforementioned items. *See*, Jan. 19, 2012 letter brief of Kevin Horbatiuk, Esq., Docket No. [#27]. In response, Plaintiff's counsel submitted a letter brief in which he essentially expressed his opinion that Defendant had intentionally and dishonestly denied Plaintiff the correct amount of benefits, but without specifically discussing items e through k, other than stating, conclusorily, that they should be included. *See*, Feb. 7, 2012 letter brief of Lawrence Heller, Esq., Docket No. [#26]. However, attached to Mr. Heller's letter brief is an unsworn statement from Plaintiff, entitled "Statement of William Chapman to Judge 2/5/2012," which fundamentally alters Plaintiff's theory of the amount that he is due, and contradicts the verified Complaint, which Plaintiff asked the Court to treat as his affidavit in support of his summary judgment motion. See, Heller Aff. [#8] at ¶ 4. Specifically, Plaintiff now claims that the correct "Total Compensation" amount is $230,386.72, based on the inclusion of items a, d,e, g, h, I, j and k, but not f, which he previously argued should be included.

Alternatively, and without explanation, Mr. Chapman indicates that the Court could arrive at a figure by including all items except d and g. *See, id*. (Page 2 of Mr. Chapman's statement). Plaintiff also now asserts that Defendants have underpaid him $5008.33 per month, rather than $4,749.34 per month, as he has claimed all along. *id*. (Claiming that he has been underpaid $60,100.03 annually).

Mr. Chapman begins his calculation on page 2 of his statement with the figure of $231,872.18, which is the total of the items in Column B of the Citigroup Plans Administration Committee Agenda, minus item g. He does not explain why that is a correct starting figure. He then suggests that, alternatively, the Court could exclude item d, which is a $90,695.70 payment received in 2002 after being deferred from 2001, or else exclude $62,011.97, which is part of his 2002 commissions that he deferred to 2003, and include item d. See, "Statement of William Chapman to Judge 2/5/2012" at p. 2. As discussed below, the Court agrees that item d should not be included, but otherwise, none of these proposed calculations or suggestions is accurate in light of the Plan's definition of Total Compensation.

The Court will disregard Mr. Chapman's arguments raised for the first time in opposition to Defendants' summary judgment motion and his untimely and unsworn statement and unexplained calculations. *See, Valentine Properties Assocs., LP v. U.S. Dept. of Housing and Urban Dev.*, 785 F.Supp.2d 357, 372 (S.D.N.Y.2011) (collecting cases denying plaintiffs' attempts to raise unpleaded claims at the summary judgment stage); *Thomas v. Egan*, 1 Fed.Appx. 52, 54, 2001 WL 30667 at * 1 (2d Cir. Jan. 10, 2001) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim. Thus, it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion.") (citations omitted).

On the other hand, as mentioned above, Defendants submitted additional information, after oral argument, regarding the basis for their decision which demonstrate that their exclusion of certain items
(continued...)

Based upon this calculation, and factoring in an offset for social security disability payments, Plaintiff maintains that the correct amount he should receive per month is $8,296.34. *See, e.g.*, letter of Attorney Heller to CIGNA dated Mar. 16, 2010, CLICNY 00146 ("I cannot understand how <u>anyone</u> can read [the policy] any way other than to result in his monthly benefit being approximately $8,296.34.") (emphasis in original).

Since Plaintiff has actually been receiving only $3,547.00 per month,[8] he claims that Defendants owe him an additional $4749.34 per month. *See*, Complaint [#1] at ¶ 25 ("[Plaintiff] has been short changed, and is owed a minimum of $4,749.00 per month[.]").

## DISCUSSION

### *Summary Judgment Standard*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the

---

[7](…continued)
was erroneous, and the Court will consider that evidence in making its ruling.

[8]See, CLICNY 00613.

nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996). Once that burden has been established, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(c).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

<u>ERISA, 29 U.S.C. § 1132</u>

Plaintiff brings this action to recover benefits pursuant to 29 U.S.C. § 1132. With respect to this statute, it is well settled that

> "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed [by a district court] under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where the plan does grant discretion to the administrator, a court "will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995).

*Tocker v. Philip Morris Companies, Inc.*, 470 F.3d 481, 487 (2d Cir. 2006). Under the

arbitrary and capricious standard, the court must uphold the administrator's decision unless it is "without reason or erroneous as a matter of law," and "[w]here the plan participant and the plan administrator offer "two competing yet reasonable interpretations of [the plan]," [the court] must accept that offered by the administrators." *Id*. at 489 (citations omitted). However, "where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *Pepe v. Newspaper and Mail Deliveries'-Publishers' Pension Fund*, 559 F.3d 140, 147 (2d Cir. 2009).

Moreover, "[w]e interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience.  If there are ambiguities in the language of an insurance policy that is part of an ERISA plan, they are to be construed against the insurer." *Critchlow v. First UNUM Life Ins. Co. of America*, 378 F.3d 246, 256 (2d Cir. 2004) (citations and internal quotation marks omitted).

In the instant case, the parties agree that the Court must apply the arbitrary and capricious standard of review.

As discussed above, Plaintiff's contention is that Defendants erred by failing to include items d and f when calculating "Total Compensation."  The Court will examine those items to see whether they fall within the definition of Total Compensation, which, as already discussed above, states, in pertinent part:

> Covered Earnings is Total Compensation as defined by the Employer.  Total Compensation is your gross pay before any deferrals into 401(k), deferred compensation plans or flexible spending accounts and includes salary paid from the prior calendar year, commissions paid from the prior calendar year, bonuses paid in the prior calendar year (excluding annual incentive bonus

paid in February of the prior year), and annual incentive bonus paid in February of the current year for prior year performance.

Cigna Life Insurance Company of New York ("CLICNY") Policy No. NYK-2260, Amendment 10, CLICNY 00438.

Item d, as noted earlier, is a $90,695.70 "ADCP Payout," meaning that it was deferred compensation that Plaintiff earned in 2001, that was actually paid to him in 2002. As defined above, "gross pay" is defined as "gross pay before any deferrals into 401(k), deferred compensation plans or flexible spending accounts." Accordingly, Plaintiff's gross pay for 2002, as set forth in item a, and counted for purposes of calculating Total Compensation, includes sales compensation of $130,214.64 (Item a), even though he opted to defer $62,011.97 of that amount until the following year. *See*, Citigroup Inc. Plans Administration Committee Agenda at p. 3, Column C, CITIGROUP 0003. Therefore, it would not be appropriate to include item d in Plaintiff's 2002 Total Compensation amount, since such compensation, although received in 2002, would be included in his gross pay for 2001, not 2002.[9] As noted above, the parties agree that 2002 is the "prior year" at issue, not 2001. Consequently, Plaintiff's contention that item d should be included in Total Compensation is incorrect based on a plain reading of the plan definition, and Defendants' decision not to include that item was therefore not arbitrary and capricious. Item e, which is interest on item d, was also properly excluded.

The next issue is whether item f, described as a "longevity bonus," in the amount of $4,296.46, should have been included in Total Compensation. Defendants' documents

---

[9] *See*, CLICNY 00542 ("Rows [sic] d would have been included in his total compensation during the 2001 plan year[.]").

describe the longevity bonus as follows:

> Financial Consultants generating $350,000 or greater in annual Gross Production qualify for the annual Longevity Bonus beginning in the month following their fifth anniversaries with Smith Barney. The Longevity Bonus is paid in February of the following calendar year to those FCs employed by the Firm on the date of the payment.

Smith Barney Citigroup 2002 Financial Consultant Compensation Plan at p. 23, CITIGROUP 00012. At oral argument, the Court directed Defendants to clarify why item f was excluded from Total Compensation. In response, Defendants stated, in pertinent part:

> Line item 'f' -- Longevity Bonus in the amount of $4,296.46 – was properly excluded from Total Compensation not because it was an annual incentive bonus for a prior year performance, but because it was not an 'annual incentive bonus.'

*See*, Horbatiuk letter brief dated Jan. 19, 2012 at p. 2. Defendants further explained that this amount was not an "annual incentive bonus" since it did not meet the definition of such under Citigroup's Short Term Disability Plan. *Id*. (referring to Administrative Record, CITIGROUP 00023). Of course, the relevant plan here is the Long Term Disability Plan, not the Short Term Disability Plan. Nevertheless, Defendants insist that they must apply the definition form the Short Term Plan, for purposes of "parallel construction and consistent plan administration." *Id*.

However, the issue of consistency between the two policies is irrelevant here. Defendants' post-argument response, rather than supporting its decision, actually undermines it, since it establishes that Longevity Bonus is not "an annual incentive bonus," which is the only type of bonus paid in 2002 that would be excluded from Total Compensation. Since it is not excluded, it is included under the relevant definition, which

includes "bonuses paid in the prior calendar year [2002,](excluding annual incentive bonus paid in February of the prior year)." Clearly, the Longevity Bonus was a bonus paid in 2002. Moreover, Defendants indicate that it was not an "annual incentive bonus." Accordingly, the Longevity Bonus, item f, in the amount of $4,296.46, should have been included in Total Compensation, and Defendants' failure to do so was arbitrary and capricious since it ignored the plan's requirement that "bonuses" should be included.

To the extent that Defendants nevertheless argue that such bonus should not be included based on definitions found in the short-term disability plan, or Defendant's interpretation of such plan, such definitions/interpretations are not consistent with the plain language of the long-term plan. Specifically, Defendants argue that the broad term "bonuses" used in the long-term plan's definition of Total Compensation really means only "non-annual cash bonuses" or "annual bonuses paid in cash or as an equity award under the Core Capital Accumulation Program." *See, e.g.*, Defs. Memo of Law [#13] at p. 4. The Court finds that such interpretation would unreasonably restrict the ordinary meaning of the term bonus found in the definition of Total Compensation. Specifically, the only type of bonus that is excluded under that definition is "annual incentive bonuses paid in February of the prior year."

Items g and h also should have been included. In that regard, Defendants indicate that "Asset Gathering Cash" was excluded because "it is not an 'annual incentive bonus paid in February of the current year for prior year performance." Horbatiuk letter brief dated January 19, 2012 at p. 2. At the outset, no one has suggested that item g was such a bonus, and in any event, it was paid in 2002, not the "current year" 2003. Moreover, Defendants' documents indicate that Asset Gathering Cash is a bonus based on a

combination of production and years of service. *See*, Smith Barney Citigroup 2002 Financial Consultant Compensation Plan at p. 27, CITIGROUP 00013.  Therefore, item g, is a bonus that was paid to Plaintiff in 2002, and that is not an annual incentive bonus paid in February. Accordingly, it should have been included as Total Compensation for the same reason as item f.  Similarly, item h, the interest on that amount, should have been included, since it is compensation paid to Plaintiff that is not excluded by the definition of Total Compensation.

Item i is income that Plaintiff earned in 2002, which represents the taxable value of life insurance that Defendants provided to him as part of his compensation package.  It is compensation that was provided to him as part of his "gross pay," and should have been included as Total Compensation.

Lastly, items j and k also should have been included as Total Compensation.  Item j is "Money Market Fund Trails Principle," which, according to Defendants' documents, is an amount equal to 10% of Plaintiff's gross production which Defendants paid into an investment fund for him. *See*, Smith Barney Citigroup 2002 Financial Consultant Compensation Plan at p. 13, CITIGROUP 00011.  Defendants indicate that such amount was properly excluded because it was "previously contributed by the employer," perhaps suggesting that it was not paid in 2002.  However, the record indicates that it was contributed in 2002, as it was included on Plaintiff's 2002 W-2 statement.  Item k is interest that Plaintiff received from prior contributions to such investment fund, and should also have been included, since it is compensation paid to Plaintiff in 2002 that is not excluded by the plan's definition of Total Compensation.

Based on the foregoing discussion, the Court finds that Defendants' failure to include items f-k in Total Compensation is not supported by the relevant plan documents, and was therefore erroneous, arbitrary and capricious. "[I]f upon review a district court concludes that the Trustees' decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a 'useless formality.'" *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) (citation omitted). This action has now been pending almost eight years, there is no additional evidence to be considered, and it has already been remanded once. In the Court's view, another remand would be a useless formality, since Plaintiff's benefit amount can readily be calculated from the record. *See, Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 51 n. 4 (2d Cir. 1996) (Remand not required where record was complete, and denial of benefits was unreasonable).

The record indicates that the proper benefit amount is 60% of Total Compensation, minus a setoff for Social Security Disability.[10] The parties agree that the Social Security Disability setoff is $2,964.00 per month. The correct Total Compensation amount is $142,229.27 ($130,214.64 + $4,296.46 + $2,811.00 + $714.75 + $774.00 + $2,991.19 + $427.23). Sixty percent of that amount is $85,337.56 annually, and $7,111.46 monthly. Applying the Social Security Disability offset results in a monthly benefit of $4,147.46 ($7,111.46 - $2,964.00 = $4,147.46). Defendants calculated the monthly benefit as $3,547.00, and therefore have been underpaying Plaintiff $600.46 per month.

---

[10]See, CLICNY 00451.

CONCLUSION

The parties' competing motions for summary judgment [#8][#10] are each granted in part and denied in part.  Defendants' calculation of Plaintiff's Total Compensation properly omitted items d and e, the 2001 ADCP deferred compensation payment and interest thereon, but improperly omitted items f-k. Counsel shall settle and submit a proposed order and judgment within twenty days of the date of this Decision and Order.

    SO ORDERED.

Dated:      Rochester, New York
              August 20, 2012

                                  ENTER:

                                  /s/ Charles J. Siragusa
                                  CHARLES J. SIRAGUSA
                                  United States District Judge